IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Christopher Gaspar, Austin Walker, and Devin Heath,<br><br>    Plaintiffs,<br><br>        v.<br><br>Chicago Police Officers Michelle Murphy, Star No. 4176, Megan Leonard, Star No. 14472, Richard Rochowicz, Star No. 1900, Christopher Liakopoulos, Star No. 11135, and the City of Chicago,<br><br>    Defendants. | Case No.: 16 CV 7221<br><br>SECOND AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS<br><br>**JUDGE ST. EVE**<br><br>**JURY DEMANDED** |

## JURISDICTION AND VENUE

1. This action arises under the United States Constitution and the Civil Rights Act of 1871 (42 U.S.C. Section 1983). This court has jurisdiction under and by virtue of 28 U.S.C. Sections 1343, 1331, and 1367.

2. Venue is founded in this judicial court upon 28 U.S.C. Section 1391 as the acts complained of arose in this district.

## PARTIES

3. At all times herein mentioned, Plaintiff Christopher Gaspar ("Gaspar") was and is a citizen of the United States, and was within the jurisdiction of this court. He was born in October, 1996, and was less than 18 years old when the incident alleged below occurred in February, 2014.

4. At all times herein mentioned, Plaintiff Austin Walker ("Walker") was and is a citizen of the United States, and was within the jurisdiction of this court. He was born in July, 1997, and was less than 18 years old when the incident alleged below occurred in February, 2014.

5. At all times herein mentioned, Plaintiff Devin Heath ("Heath") was and is a citizen of the United States, and was within the jurisdiction of this court. He was born in January, 1997, and was less than 18 years old when the incident alleged below occurred in February, 2014.

6. At all times herein mentioned, Defendant Chicago Police Officer Michelle Murphy, Star No. 4176 ("Murphy") was employed by the Chicago Police Department as a Chicago Police Officer, and was acting under color of state law and as the employee, agent, or representative of the Chicago Police Department. This Defendant is being sued in her individual capacity.

7. At all times herein mentioned, Defendant Chicago Police Officer Megan Leonard, Star No. 14472 ("Leonard") was employed by the Chicago Police Department as a Chicago Police Officer, and was acting under color of state law and as the employee, agent, or representative of the Chicago Police Department. This Defendant is being sued in her individual capacity.

8. At all times herein mentioned, Defendant Chicago Police Officer Richard Rochowicz, Star No. 1900 ("Rochowicz") was employed by the Chicago Police Department as a Chicago Police Officer, and was acting under color of state law and as the employee, agent, or representative of the Chicago Police Department. This Defendant is being sued in his individual capacity.

9. At all times herein mentioned, Defendant Chicago Police Officer Christopher Liakopoulos, Star No. 11135, ("Liakopoulos") was employed by the Chicago Police Department as a Chicago Police Officer, and was acting under color of state law and as the employee, agent, or representative of the Chicago Police Department. This Defendant is being sued in his individual capacity.

10. At all times herein mentioned, the City of Chicago was a political division of the State of Illinois, existing as such under the laws of the State of Illinois. At all relevant times, the City of Chicago maintained, managed, and/or operated the Chicago Police Department. At all relevant times the City of Chicago was the employer of all individual defendants.

## FACTUAL ALLEGATIONS

11. On or about February 7, 2014, Plaintiffs were lawfully located in the City of Chicago.

12. On that date Murphy communicated to fellow employees of the Chicago Police Department the false allegation that she witnessed Plaintiffs engaged in criminal activity.

13. On that date Leonard assisted Murphy with communicating to fellow employees of the Chicago Police Department the allegation that she witnessed Plaintiffs engaged in criminal activity with the knowledge that this allegation was false.

14. Leonard believed that Murphy was intoxicated at the time Murphy was communicating false allegations against Plaintiffs

15. Based upon Murphy's false communications accusing Plaintiffs of engaging in criminal activity Rochowicz and Liakopoulos participated in a traffic stop of the vehicle in which Plaintiffs were traveling.

16. There was no legal cause to initiate a traffic stop of Plaintiffs' vehicle.

17. None of the Plaintiffs had engaged in any illegal behavior.

18. After initiating the traffic stop of Plaintiffs' vehicle Rochowicz and/or Liakopoulos, ordered Plaintiffs, at gun point, to exit their vehicle.

19. There was no legal cause for Rochowicz or Liakopoulos to point guns at Plaintiffs.

20. After Plaintiffs exited their vehicle Rochowicz and Liakopoulos used unreasonable force against Plaintiffs' persons while handcuffing them.

21. The use of force by Rochowicz and Liakopoulos against Plaintiffs was unnecessary and unreasonable.

22. There was no legal justification for Rochowicz or Liakopoulos to use the amount of force that they did while handcuffing Plaintiffs.

23. After being detained and restrained for a period of time all of the Plaintiffs were eventually released without being charged with any crime.

24. By reason of the above-described acts and omissions of Defendants, Plaintiffs sustained injuries, including but not limited to, humiliation and indignities, and suffered emotional distress all to their damage in an amount to be ascertained.

25. The aforementioned acts of Defendants were willful, wanton, malicious, oppressive and done with reckless indifference to and/or callous disregard for Plaintiffs' rights and justify the awarding of exemplary and punitive damages in an amount to be ascertained according to proof at the time of trial.

26. By reason of the above-described acts and omissions of Defendants, Plaintiffs were required to retain an attorney to institute, prosecute and render legal assistance to them in the within action so that they might vindicate the loss and impairment of their rights. By reason thereof, Plaintiffs request payment by Defendants of a reasonable sum for attorney's fees pursuant to 42 U.S.C. Section 1988, the Equal Access to Justice Act or any other provision set by law.

### COUNT I
### Plaintiffs Against Murphy and Leonard for
### UNREASONABLE SEIZURE

27. Plaintiffs hereby incorporate and reallege paragraphs one (1) through twenty six (26) hereat as though fully set forth at this place.

28. By reason of the conduct by Murphy and Leonard, Plaintiffs were deprived of rights, privileges and immunities secured to them by the Fourth and/or Fourteenth Amendments to the Constitution of the United States and laws enacted thereunder.

29. Murphy and Leonard violated Plaintiffs' rights in the following manner: Falsely reporting, and/or assisting with making a false report, to fellow Chicago Police Personnel that Plaintiffs had engaged in criminal conduct so as to cause Plaintiffs to be seized by Chicago Police Officers without any legal cause. This was unreasonable, excessive, and in violation of the Fourth Amendment. Therefore, Murphy and Leonard are liable to Plaintiffs pursuant to 42 U.S.C. § 1983.

### COUNT II
### Plaintiffs Against Murphy and the City of Chicago for
### FALSE IMPRISONMENT

30. Plaintiffs hereby incorporate and reallege paragraphs one (1) through twenty six (26) hereat as though fully set forth at this place.

31. Murphy procured Plaintiffs' arrest/seizure by other members of the Chicago Police Department when she falsely reported that Plaintiffs had engaged in criminal activity for the purpose of requesting that Plaintiffs be arrested/seized.

32. The Chicago Police Officers that arrested/seized Plaintiffs did so based solely on the false information communicated by Murphy.

33. The Chicago Police Officers that arrested/seized Plaintiffs did not observe Plaintiffs engage in any criminal activity.

34. The Chicago Police Officers that arrested/seized Plaintiffs did not have any source of information other than Murphy indicating Plaintiffs allegedly engaged in criminal activity.

35. As a result of this false imprisonment Plaintiffs were injured emotionally and otherwise.

36. The City of Chicago is liable to Plaintiffs for the acts of Murphy pursuant to the doctrine of *respondeat superior*.

37. Therefore, Murphy and the City of Chicago are liable under the supplemental state law claim of False Imprisonment.

### COUNT III
### Plaintiffs against Rochowicz and Liakopoulos for
### EXCESSIVE FORCE

38. Plaintiffs hereby incorporate and reallege paragraphs one (1) through twenty six (26) hereat as though fully set forth at this place.

39. By reason of Defendants' conduct, Plaintiffs were deprived of rights, privileges and immunities secured to them by the Fourth and/or Fourteenth Amendments of the Constitution of the United States and laws enacted thereunder.

40. The arbitrary use of force by Defendants against Plaintiffs was in violation of Plaintiffs' Constitutional Rights and not authorized by law. The use of unreasonable force included intentionally and unreasonably pointing guns at Plaintiffs and using unreasonable force against their persons during the process of handcuffing Plaintiffs. These acts were in violation of

Plaintiffs' Fourth and/or Fourteenth Amendment rights. Therefore, Defendants are liable to Plaintiffs pursuant to 42 U.S.C. § 1983

## COUNT IV
### Plaintiffs Against the CITY OF CHICAGO For
### The Supplemental Claim Of BATTERY

41. Plaintiffs hereby incorporate and reallege paragraphs one (1) through twenty six (26) hereat as though fully alleged at this place.

42. Rochowicz and/or Liakopoulos, without any legal cause, used force against Plaintiffs intentionally or with willful and wanton reckless disregard for the safety of Plaintiffs.

43. The use of force by Rochowicz and/or Liakopoulos against Plaintiffs' persons constituted a battery to Plaintiffs.

44. As a result of the battery, Plaintiffs were injured physically, emotionally, and otherwise.

45. The City of Chicago is liable to Plaintiffs for the acts of Rochowicz and/or Liakopoulos pursuant to the doctrine of *respondeat superior.*

46. Therefore, the City of Chicago is liable under the supplemental state law claim of Battery.

## COUNT V
### Plaintiffs Against Murphy and Leonard for
### Conspiracy to Deprive Plaintiffs' Civil Rights
### (42 U.S.C. § 1983)

47. Plaintiffs hereby incorporate and reallege paragraphs one (1) through twenty six (26) hereat as though fully set forth at this place.

48. By reason of the conduct by Murphy and Leonard, Plaintiffs were deprived of rights secured to them by the Fourth and/or Fourteenth Amendments to the Constitution of the United States and laws enacted thereunder.

49. On February 7, 2014, Murphy and Leonard agreed to work in concert to cause a false report be made to their fellow Chicago Police Officers accusing Plaintiffs of engaging in an armed robbery. The purpose of this agreement was to cause Plaintiffs to be seized by their fellow Chicago Police Officers without probable cause.

50. In furtherance of this conspiracy on February 7, 2014, Murphy made two 911 calls falsely reporting that she witnessed Plaintiffs engaged in an armed robbery.

51. In furtherance of this conspiracy on February 7, 2014, Leonard assisted with making the false report to her fellow police officers by operating a car carrying Murphy and Leonard and using that car to follow Plaintiffs while Murphy falsely reported the actions of Plaintiffs.

52. Murphy and Leonard also acted in furtherance of this conspiracy months later when they both gave false statements to investigators that were examining their actions on February 7, 2014. The purpose of giving false statements was to conceal the unconstitutional nature of their motivations and actions.

53. The actions of Murphy and Leonard caused Plaintiffs to be seized by Chicago Police Officers in violation of their civil rights. There was no actual legal cause for Plaintiffs to be seized by Chicago Police Officers, and that seizure was a violation of the Fourth Amendment.

54. Causing Plaintiffs to be seized by police officers without legal cause was a violation of Plaintiffs' Fourth Amendment rights. Accordingly, Murphy and Leonard are liable to Plaintiffs pursuant to 42 U.S.C. § 1983.

## COUNT VI
## PLAINTIFFS AGAINST DEFENDANT LEONARD
## FOR FAILURE TO INTERVENE

55. Plaintiffs hereby incorporate and reallege paragraphs one (1) through twenty six (26) hereat as though fully set forth at this place.

56. On February 7, 2014, Leonard knew that Murphy had consumed alcohol and she believed that Murphy was intoxicated when Murphy called 911 to falsely accuse Plaintiffs of committing an armed robbery of a convenience store.

57. Leonard had just exited the convenience store and returned to her vehicle before Murphy called 911. Leonard knew, based upon her own observations while inside the store, that Plaintiffs had not committed an armed robbery or engaged in any actions that would create a reason to believe that they had committed an armed robbery.

58. Leonard, having just exited the convenience store, did not believe that anyone had committed an armed robbery of the store.

59. Leonard knew that Murphy had not actually entered the convenience store, but rather had remained in Leonard's parked vehicle, and thus she knew Murphy was not as well positioned as herself to know that no robbery had occurred inside the store.

60. Leonard sat next to Murphy inside a vehicle while Murphy made two 911 calls falsely reporting a robbery that Leonard knew did not occur.

61. Despite the fact that Leonard knew that no robbery had occurred, and that Plaintiffs had not engaged in any activity that could have been mistaken for a robbery, Leonard used her vehicle to follow Plaintiff's vehicle in order to allow Murphy to report the location of Plaintiffs to a 911 call taker so that Plaintiff's would be seized by the Chicago Police Department. Leonard continued to follow Plaintiffs' vehicle until it was stopped by other

9

Chicago Police Officers, and remained parked nearby as Plaintiffs were removed at gunpoint from their vehicle.

62. Leonard knew that Murphy falsely reporting an armed robbery to the Chicago Police Department created a dangerous situation for the Plaintiffs and police officers responding to the false report.

63. Leonard, as a fellow police officer, had a realistic opportunity to stop Murphy from making two calls to 911 falsely reporting an armed robbery. Leonard had the ability to inform 911 that in fact no robbery had occurred. As the operator of her vehicle Leonard had the ability to stop following Plaintiffs and thereby prevent Murphy from continuing to report the location of Plaintiffs to a 911 call taker. Once Leonard observed other Chicago Police Officers arrive and begin the traffic stop and seizure of Plaintiffs she had a realistic opportunity to intervene and inform the other Chicago Police Officers that no robbery had occurred and that there was no basis for seizing Plaintiffs. Leonard did not take any steps to intervene and prevent the violation of Plaintiffs' civil rights.

64. Leonard's failure to intervene was unreasonable in light of her belief that Murphy was intoxicated, her knowledge that no robbery had occurred, her knowledge that there was no reason to believe that Plaintiffs had committed a crime, and her ability as a police officer and operator of the vehicle to stop the false report and provide an accurate report to other members of the Chicago Police Department that no crime had occurred.

65. Leonard's failure to intervene and prevent the violation of Plaintiffs' civil rights caused harm to each of the Plaintiffs. Accordingly, Leonard is liable to Plaintiffs pursuant to 42 U.S.C. § 1983.

10

## COUNT VII
## INDEMNIFICATION PURSUANT TO 745 ILCS 10/9-102
## AGAINST DEFENDANT CITY OF CHICAGO

66. Plaintiffs re-allege and incorporate the allegations of paragraphs 1 through 65 hereat as though fully set forth at this place.

67. The acts of the individual Defendants were committed in the scope of their employment with the Defendant City of Chicago.

68. Pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-402, Defendant City of Chicago is liable for any judgments for compensatory damages in this case arising from the actions of the individual Defendants.

WHEREFORE, the Plaintiffs, by and through their attorneys, request judgment as follows against the Defendants:

1. That the Defendants be required to pay Plaintiffs' general damages, including emotional distress, in a sum to be ascertained;

2. That the Defendants be required to pay Plaintiffs' special damages;

3. That the Defendants be required to pay Plaintiffs' attorneys fees pursuant to Section 1988 of Title 42 of the United States Code, the Equal Access to Justice Act or any other applicable provision;

4. That the Defendants other than the City of Chicago be required to pay punitive and exemplary damages in a sum to be ascertained;

5. That the Defendants be required to pay Plaintiffs' costs of the suit herein incurred; and

6. That Plaintiffs have such other and further relief as this Court may deem just and proper.

                              BY:    s/ Garrett Browne
                                         Garrett Browne
                                         ED FOX & ASSOCIATES, Ltd.
                                         Attorneys for Plaintiffs
                                         300 West Adams

11

          Suite 330
          Chicago, Illinois 60606
          (312) 345-8877
          gbrowne@efox-law.com

**PLAINTIFFS HEREBY REQUEST A TRIAL BY JURY**

      BY:  s/ Garrett Browne
          Garrett Browne
          ED FOX & ASSOCIATES, Ltd.
          Attorneys for Plaintiffs
          300 West Adams
          Suite 330
          Chicago, Illinois 60606
          (312) 345-8877
          gbrowne@efox-law.com