# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER GASPAR, AUSTIN WALKER, and DEVIN HEATH, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 16 C 7221 |
| v. | ) ) | |
| CITY OF CHICAGO, et al., | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On September 12, 2017, Plaintiffs Christopher Gaspar, Austin Walker, and Devin Heath filed a seven-count Second Amended Complaint against the City of Chicago and certain Chicago Police Officers alleging violations of their Fourth Amendment rights, a conspiracy claim, and a failure to intervene claim under 42 U.S.C. § 1983, along with state law claims of battery, false imprisonment, and indemnification. *See* 28 U.S.C. §§ 1331, 1367(a). Before the Court is Defendant Officer Michelle Murphy's motion for partial summary judgment, Defendant Officer Megan Leonard's motion for partial summary judgment, and Defendants City of Chicago's, Sergeant Richard Rochowicz's, and Officer Christopher Liakopoulos' joint motion for summary judgment (collectively "City Defendants") – all brought pursuant to Federal Rule of Civil Procedure 56(a).

For the following reasons, the Court grants Defendants Murphy's and Leonard's partial summary judgment motions as to Plaintiffs' conspiracy claim as alleged in Count V. The Court denies Defendant Leonard's partial summary judgment motion as to Plaintiffs' Fourth

Amendment unreasonable seizure claim in Count I. In addition, the Court denies the City Defendants' summary judgment motion in its entirety.

Accordingly, the remaining claims in this lawsuit include: (1) Plaintiffs' Fourth Amendment unreasonable seizure claim against Defendants Leonard and Murphy in Count I; (2) Plaintiffs' state law false imprisonment claim against Defendant Murphy and the City of Chicago in Count II; (3) Plaintiffs' Fourth Amendment excessive force claim against Defendants Liakopolous and Rochowicz in Count III; (4) Plaintiffs' state law battery claim sounding in tort against the City of Chicago in Count IV; (5) Plaintiffs' failure to intervene claim against Defendant Leonard in Count VI, and (6) the state law indemnification claim against the City of Chicago in Count VII.

## BACKGROUND[1]

This civil rights lawsuit is based on an incident that took place on February 7, 2014, at which time the three Plaintiffs were under the age of 18-years-old. (R. 92, City Defs.' Stmt. Facts ¶¶ 1-3.) During the relevant time period, Defendants Sergeant Rochowicz, Officer Liakopolous, Officer Murphy, and Officer Leonard were Chicago Police Officers. (*Id*. ¶¶ 4-7.)

On the night of February 7, 2014, Plaintiffs drove to a 7-Eleven store at the corner of 111th Street and Kedzie Avenue in Chicago. (*Id.* ¶ 10.) Defendant Officers Leonard and Murphy, who were off-duty at that time, were in the 7-Eleven parking lot. (R. 86, Leonard Stmt. Facts ¶ 5; R. 84, Murphy Stmt. Facts ¶¶ 4, 5.) Defendant Murphy testified at her deposition that she saw three black males in the their vehicle and that Defendant Leonard and Murphy were aware of robberies having occurred in the area, including robberies at the same 7-Eleven.

---

[1] Because the Court considered the City Defendants' arguments concerning Plaintiffs' Local Rule 56.1(b)(3)(A) Response in the context of each fact, the Court denies Defendants' motion to strike Plaintiffs' response – argued in Defendants' reply brief – as moot.

(Leonard Stmt. Facts ¶ 15; Murphy Stmt. Facts ¶ 18.) After two of the Plaintiffs entered the 7-Eleven, Defendant Murphy thought one of the Plaintiffs was carrying a knife based on his quick movements. (Murphy Stmt. Facts ¶ 15; Leonard Stmt. Facts ¶ 16.) After observing the actions of the two Plaintiffs inside the 7-Eleven, Defendant Murphy also thought an armed robbery had occurred. (Murphy Stmt. Facts ¶¶ 16, 17.) On the other hand, Defendant Leonard testified that she did not believe a robbery had occurred. (Leonard Stmt. Facts ¶ 22; R. 99, Pls.' Add'l Stmt. Facts ¶ 7.) In particular, Defendant Leonard testified that although she saw Plaintiffs inside the 7-Eleven, Plaintiffs did not do anything that would have made someone believe they were robbing the store. (Pls.' Add'l Stmt. Facts ¶¶ 2, 3.)

Nonetheless, Defendant Murphy called 911 to report an armed robbery to an Office of Emergency Management and Communications dispatcher. (City Defs.' Stmt. ¶ 12; Murphy Stmt. Facts ¶ 17.) After the 911 call was disconnected, Defendant Murphy called again identifying herself as an off-duty police officer explaining that she believed the 7-Eleven was being or had been robbed. (City Defs.' Stmt. Facts ¶ 13; Leonard Stmt. Facts ¶ 24.) Both the 911 dispatcher and Defendant Leonard told Defendant Murphy multiple times to calm down while she was making the 911 call. (Murphy Stmt. Facts ¶ 25.) Defendant Murphy's intention in making the 911 call was to have on-duty police officers stop the vehicle she had described based on her suspicion that an armed robbery had occurred inside the 7-Eleven. (City Defs.' Stmt. Facts ¶ 14; Pls.' Add'l Stmt. Facts ¶ 16.)

At the same time, after making their purchase inside the 7-Eleven, Plaintiffs Gaspar and Walker returned to their vehicle where Plaintiff Heath remained. (City Defs.' Stmt. Facts ¶ 15.) Gaspar drove out of the 7-Eleven parking lot and began traveling eastbound on 111th Street toward Western Avenue. (*Id*. ¶ 16; R. 94-2, Pls.' Add'l Stmt. Facts ¶ 1.) Defendant Officer

Leonard began following Plaintiffs' vehicle while Defendant Officer Murphy, who was the passenger, remained on the telephone with the 911 dispatcher, at which time she provided a description and license plate number of Plaintiffs' vehicle, along with Plaintiffs' direction of travel. (City Defs.' Stmt. Facts ¶ 17; Leonard Stmt. Facts ¶ 31.) Shortly thereafter, a broadcast was made over the radio to Chicago Police Officers that an armed robbery had occurred at the 7-Eleven located at 111th Street and Kedzie Avenue, including a description of the vehicle, the suspected offenders, and the direction of travel. (City Defs.' Stmt. Facts ¶ 18.) The dispatcher also broadcast the information that an off-duty Chicago Police Officer had called in the robbery and was following the vehicle. (*Id*. ¶ 19.)

After receiving the broadcast, Defendant Sergeant Rochowicz, who was on duty and in his unmarked SUV, responded to the call. (*Id*. ¶ 20.) Defendant Officer Liakopolous also responded to the call while in his marked squad car. (*Id*. ¶ 21.) Defendant Rochowicz observed Plaintiffs' vehicle at 107th Street and Talman Avenue and then activated his emergency lights, after which Plaintiffs stopped their vehicle. (*Id*. ¶ 22.) Defendant Rochowicz then called in the location of the stop to dispatch and exited his vehicle. (*Id*. ¶ 24.) Based on the 911 transmission, Defendant Rochowicz believed that the occupants of the vehicle were armed and dangerous. (*Id*. ¶ 23.) Also, because the radio broadcast included information that one or more of the individuals were involved in an armed robbery, Defendant Rochowicz conducted a felony traffic stop. (*Id*. ¶ 25.) During a felony traffic stop, Chicago police officers follow a set of procedures that are different from a regular traffic stop. (*Id*. ¶ 26.) The officers, for example, must be on high alert for weapons and their own safety. (*Id*.)

Defendant Rochowicz then drew his firearm, approached the vehicle, and gave verbal direction for the occupants to show their hands. (*Id*. ¶ 27; Pls.' Add'l Stmt. Facts ¶ 2.) Gaspar

4

testified at his deposition that Defendant Rochowicz screamed "let me see your fucking hands" at him, after which he complied. (Pls.' Add'l Stmt. Facts ¶ 3.) The parties dispute whether Defendant Rochowicz opened the car door and pointed his gun at Gaspar's face. (*Id*. ¶ 4; Defs.' Stmt. Facts ¶ 31.) Specifically, Gaspar testified that Defendant Rochowicz pointed a gun at his face and yelled "Don't fucking move or I'm going to blow your fucking head off." (Pls.' Add'l Stmt. Facts ¶ 4.) Furthermore, Gaspar testified that Defendant Rochowicz removed him from the car by grabbing him by the chest and pulling him out of the car, whereas Defendant Rochowicz testified that he removed Gaspar by using his arm. (City Defs.' Stmt. Facts ¶¶ 33, 34.) The parties dispute what happened after Defendant Rochowicz pulled Gaspar out of the car, except that when Gaspar was on the ground Defendant Rochowicz handcuffed him. (*Id*. ¶¶ 35-37.) Gaspar testified that when he hit the ground, it hurt and cause him pain in his knees and elbows. (Pls.' Add'l Stmt. Facts ¶ 8.) In addition, Gaspar maintains that Defendant Rochowicz placed his knee on the back of Gaspar's neck when handcuffing him. (*Id*. ¶ 6.) Further, Gaspar testified that after he explained that he could not get off the ground without assistance, Defendant Rochowicz grabbed him by the coat, pulled him off the ground, and forcibly shoved him back into the car. (*Id*. ¶ 9.) The parties do not dispute that Gaspar did everything Defendant Rochowicz told him to do and did not resist. (*Id*. ¶¶ 5, 6.) Moreover, Defendant Rochowicz testified that Plaintiffs obeyed his commands. (*Id*. ¶ 21.)

At this point, both Plaintiffs Heath and Walker remained inside the vehicle. (City Defs.' Stmt. Facts ¶ 40.) A Chicago Police Officer then removed Heath from the vehicle. (*Id*. ¶ 41.) Heath testified at his deposition that it was Defendant Rochowicz who removed him from the vehicle, whereas other deposition testimony indicates that other police officers removed him. (*Id.* ¶¶ 42-44; Pls.' Add'l Stmt. Facts ¶ 10.) After the officer removed Heath from the vehicle,

the officer pulled him to the ground. (City Defs.' Stmt. Facts ¶ 45; Pls.' Add'l Stmt. Facts ¶ 11.) The officer then patted down Heath and brought him back to the car. (City Defs.' Stmt. ¶ 46.) Heath testified that Defendant Rochowicz dragged him back to the car, handcuffed him, and then shoved against the car. (*Id.*; Pls.' Add'l Stmt. Facts ¶¶ 11-12.) Furthermore, Heath testified that he was in fear for his life during the incident and experienced neck pain as a result of the incident. (Pls.' Add'l Stmt. Facts ¶ 14.)

Thereafter, Defendant Officer Liakopolous grabbed Walker from the car. (City Defs.' Stmt. Facts ¶¶ 47-48; Pls.' Stmt. Facts ¶ 16.) Walker testified at his deposition that while being handcuffed, Defendant Officer Liakopolous put his knee at the back of his neck and applied pressure. (City Defs.' Stmt. Facts ¶¶ 49-53; Pls.' Add'l Stmt. Facts ¶¶ 16, 23-24.) After Officer Liakopolous released him, Walker discovered that he was bleeding from his knee, shin, and leg as a result of being thrown to the ground. (Pls.' Add'l Stmt. Facts. ¶ 17.) Officer Liakopolous admitted that Walker did not resist being placed in handcuffs. (*Id.* ¶ 26.)

Over twenty officers responded to Defendant Murphy's call, and once Plaintiffs were secured and out of the vehicle, the officers began to investigate what occurred at the 7-Eleven. (City Defs.' Stmt. Facts ¶¶ 55-56.) At that time, police officers asked Plaintiffs for identification information so the officers could perform a name check. (*Id*. ¶ 62.) About 45 minutes later, the officers determined that the reported armed robbery had not occurred at the 7-Eleven on 111th and Kedzie. (*Id*. ¶ 63.) The officers then released Plaintiffs telling them they were free to leave. (*Id*. ¶ 64.) The officers did not charge Plaintiffs with any crimes. (*Id*. ¶¶ 69-71; Leonard Stmt. Facts ¶ 44.) Moreover, Defendants concede that there was no knife and no robbery. (Leonard Stmt. Facts ¶ 43.) At her deposition, Defendant Leonard admitted that the situation was "over-

exaggerated" and "was totally completely blown out of proportion and never should have happened." (Pls.' Add'l Stmt. Facts ¶ 23.)

Based on these facts, Plaintiffs bring the following claims in their Second Amended Complaint: (1) a Fourth Amendment unreasonable seizure claim against Defendants Murphy and Leonard (Count I); (2) a state law false imprisonment claim against Defendants Murphy and the City of Chicago (based respondeat superior) (Count II); (3) a Fourth Amendment excessive force claim against Defendants Rochowicz and Liakopoulos (Count III); (4) a state law battery claim sounding in tort against the City of Chicago (based on respondeat superior) (Count IV); (5) a conspiracy claim brought under 42 U.S.C. § 1983 against Defendants Leonard and Murphy (Count V); (6) a constitutional failure to intervene claim against Defendant Leonard (Count VI); and (7) an indemnification claim against the City of Chicago (Count VII).

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine

7

issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted). "To survive summary judgment, the nonmoving party must show evidence sufficient to establish every element that is essential to its claim and for which it will bear the burden of proof at trial." *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 591 (7th Cir. 2016) (citations omitted).

## ANALYSIS

### I. Constitutional Claims Against Defendants Murphy and Leonard

In Count I of the Second Amended Complaint, Plaintiffs bring a Fourth Amendment unreasonable seizure claim against Defendants Murphy and Leonard based on the 911 call reporting that Plaintiffs had engaged in criminal conduct that caused other Chicago Police Officers to seize them without any legal justification. *See Green v. Newport*, 868 F.3d 629, 633 (7th Cir. 2017) ("The Fourth Amendment prohibits unreasonable searches and seizures, but police may conduct an investigatory stop of an individual when the officer has reasonable suspicion that a crime may be afoot."). Plaintiffs bring this claim against Defendants Murphy and Leonard asserting that the off-duty officers' actions set into motion a series of events that they knew or reasonably should have known would cause Defendants Rochowicz and Liakopoulos to seize Plaintiffs without sufficient legal cause. *See Rasho v. Elyea*, 856 F.3d 469, 478 (7th Cir. 2017) (a "defendant will be deemed to have sufficient personal responsibility if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent.") (citation omitted); *see also Surita v. Hyde,* 665 F.3d 860, 875 (7th Cir. 2011) (government official may cause constitutional deprivation if he "sets in motion a series of events that [he] knew or reasonably should have known would cause others to deprive plaintiff of constitutional rights.") (quoting *Brokaw v. Mercer Cnty.,* 235 F.3d 1000, 1012 (7th Cir. 2000)); *see also Conner v. Reinhard,* 847 F.2d 384, 397 (7th Cir. 1988) ("requisite causal connection is

8

satisfied if the defendant set in motion a series of events that the defendant knew or should reasonably have known would cause others to deprive the plaintiff of her constitutional rights.").

In her motion, Defendant Murphy makes no arguments pertaining to the unreasonable seizure claim brought against her in Count I, and thus the Court addresses Defendant Leonard's arguments in relation to Count I.[2] In her summary judgment motion, Defendant Leonard asserts that she did not participate in any unlawful seizure. She first posits that she did not personally seize Plaintiffs, which is clearly undisputed. Second, Defendant Leonard argues that she did not set the traffic stop in motion. In doing so, she points to evidence that she did not participate in Defendant Murphy's decision to place the 911 call and that she and Murphy did not talk to one another during Murphy's two 911 calls. These factual assertions, however, are disputed by evidence in the record, including that Defendant Murphy testified she had a conversation with Defendant Leonard before calling 911. (Murphy Stmt. Facts ¶ 20.) Viewing the facts and reasonable inferences in Plaintiffs' favor, not only did Murphy testify that she and Leonard talked about the 911 call before making it, they jointly decided to follow Plaintiffs' car. (Pls.' Add'l Stmt. Facts ¶ 15.) Defendant Leonard also testified that she was following Plaintiffs' car to assist Murphy with reporting to 911 the direction of Plaintiffs' travel. (*Id*. ¶ 18.) Further, it is undisputed that Murphy's 911 call was based in part on what Leonard had witnessed at the 7-Eleven. (*Id*. ¶ 32.) In addition, the recording of the 911 call indicates that Defendant Murphy was communicating with Leonard during the call. (*Id*. ¶ 19.) As such, Plaintiffs have provided sufficient evidence – viewed in their favor – raising a triable issue of fact that Defendant Leonard

---

[2] In Count VI, Plaintiffs bring a failure to intervene claim against Defendant Leonard. Although Defendant Leonard argues that she did not have a realistic opportunity to intervene, she is not pursuing summary judgment on this claim because a failure to intervene analysis "almost always" implicates questions of fact for the jury.

participated in the 911 call that set into motion the alleged unlawful seizure. The Court therefore denies Defendant Leonard's motion in respect to Count I.

Next, both Defendants Leonard and Murphy assert that Plaintiffs' § 1983 conspiracy claim as alleged in Count V fails as a matter of law. In particular, Defendants Leonard and Murphy contend that Plaintiffs' conspiracy claim embraces the same alleged misconduct in Count I and does not seek to attach liability to any other Defendants. Indeed, Plaintiffs' conspiracy claim does not allege any injury above and beyond the predicate unreasonable seizure claim as alleged in Count I – nor does it seek to spread liability to additional defendants. *See Moore v. Morales,* 445 F. Supp. 2d 1000, 1012 (N.D. Ill. 2006) ("A plaintiff cannot prevail if the defendants did not cause any injury above and beyond the torts that they allegedly conspired to commit."); *see also Smith v. Gomez,* 550 F.3d 613, 617 (7th Cir. 2008) ("conspiracy is not an independent basis of liability in § 1983 actions"); *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988) ("the function of [the] conspiracy doctrine is merely to yoke particular individuals to the specific torts charged in the complaint"); *Hostrop v. Bd. of Jr. College Dist. No. 515,* 523 F.2d 569, 576 (7th Cir. 1975) ("The doctrine of civil conspiracy extends liability for a tort ... to persons other than the actual wrongdoer."); *Cf. Gramenos v. Jewel Co., Inc.,* 797 F.2d 432, 435 (7th Cir. 1986) ("If the arrest was constitutionally unreasonable, then the police are liable under § 1983 without regard to the 'conspiracy'"). In response, Plaintiffs point to a district court decision that highlights the above precedent, but where the court concluded that the plaintiff's conspiracy claim was not "subsumed in the other substantive tort claims" because the alleged conspiracy involved more than an unlawful seizure, but also allegations of false arrest and malicious prosecution, and extended the liability to another defendant. *See Martinez v. City of Chicago*, No. 14-CV-369, 2016 WL 3538823, at *5 (N.D. Ill. June 29, 2016). Such is not the

case here. Therefore, Plaintiffs' conspiracy claim is redundant of their unreasonable seizure claim as alleged against Defendants Leonard and Murphy in Count I of the Second Amended Complaint.[3] The Court therefore grants Defendants Leonard's and Murphy's partial summary judgment motions as to Count V.

## II. Constitutional Claim Against Defendants Rochowicz and Liakopoulos

In Count III of the Second Amended Complaint, Plaintiffs allege that Defendants Rochowicz and Liakopoulos used excessive force during the February 7, 2014 traffic stop in violation of the Fourth Amendment. *See Archer v. Chisholm,* 870 F.3d 603, 617 (7th Cir. 2017) ("The Fourth Amendment prohibits the use of excessive force during a seizure."). "When an officer is accused of using excessive force, the decisive question is whether the officer's conduct meets the Fourth Amendment's objective standard of reasonableness." *United States v. Brown*, 871 F.3d 532, 536 (7th Cir. 2017). Simply put, "[i]n deciding excessive force claims, the issue is whether an officer's use of force was objectively reasonable given the information he or she knew at the time." *Doornbos v. City of Chicago*, 868 F.3d 572, 579 (7th Cir. 2017); *see also White v. Hefel,* 875 F.3d 350, 358 (7th Cir. 2017) ("[T]he key inquiry in an excessive-force case is the amount of force used, not the degree of harm that was inflicted on the victim."). "The nature and extent of the force that may be used depends upon the circumstances surrounding an arrest, including 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Howell v. Smith*, 853 F.3d 892, 898 (7th Cir. 2017)

---

[3] Although a plaintiff may pursue alternative theories of liability at the pleading stage, *see* Fed.R.Civ.P. 8(d)(3), to "survive summary judgment, the nonmoving party must show evidence sufficient to establish every element that is essential to its claim and for which it will bear the burden of proof at trial." *Diedrich v. Ocwen Loan Servicing, LLC,* 839 F.3d 583, 591 (7th Cir. 2016) (citations omitted).

11

(citation omitted); *see also Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

Examining the evidence and all reasonable inferences in Plaintiffs' favor, Plaintiffs – who were all under the age of eighteen at the time of the incident – claim that Defendant Rochowicz pointed a gun at Gaspar's face and yelled "Don't fucking move or I'm going to blow your fucking head off." Other evidence viewed in Plaintiffs' favor indicates that Defendant Rochowicz removed Gaspar from the car by grabbing him by the chest and pulling him out of the car, after which Defendant Rochowicz placed a knee on Gaspar's neck while handcuffing him. Gaspar also testified that Defendant Rochowicz thereafter grabbed him by the coat, pulled him off the ground, and forcibly shoved him back into the car. Plaintiff Heath testified that Defendant Rochowicz dragged him back to the car after he was on the ground, and then shoved him against the car. Also, Plaintiff Walker testified that Defendant Liakopolous grabbed him and placed his knee at the back of Walker's neck and continued to kneel on Walker's back after he was handcuffed. There is also undisputed evidence that Gaspar did not resist arrest and that all three Plaintiffs complied with the police officers' orders. In addition, Officer Liakopolous admitted that Walker did not resist being placed in handcuffs. During the traffic stop, Defendants never saw Plaintiffs engage in any illegal activity, but based on the radio transmission, Defendants Rochowicz and Liakopolous believed that the occupants of the vehicle were armed and dangerous.

Defendants first argue that Defendant Rochowicz was justified in pointing his gun at Gaspar under the circumstances highlighting the Seventh Circuit's decision in *Williams v. City of Champaign*, 524 F.3d 826 (7th Cir. 2008). Indeed, *Williams* teaches "that if you are a police officer with reason to believe there may be an armed robber in a [vehicle,] you approach with

12

utmost caution, which may include pointing a gun at the occupants." *Id.* at 828. That being said, viewing the circumstances known to Defendant Rochowicz while he seized Gaspar, based on Gaspar's compliance with Defendant Rochowicz's orders, the undisputed fact that Gaspar did not resist arrest, and the fact that Plaintiffs quickly pulled over after spotting Defendant Rochowicz's lights and siren, Defendant Rochowicz's conduct after he encountered Gaspar and subdued him raises a genuine dispute of material fact that his use of force was objectively unreasonable and violated Gaspar's right to be free from excessive force because Gaspar was subdued and no longer a threat of danger to the officer. *See Miller v. Gonzalez*, 761 F.3d 822, 829 (7th Cir. 2014) ("prohibition against significant force against a subdued suspect applies notwithstanding a suspect's previous behavior—including resisting arrest, threatening officer safety, or potentially carrying a weapon."). Likewise, construing the facts in Plaintiffs' favor, testimony reveals that Defendant Rochowicz slammed Heath to the ground, dragged him along the ground, stood him up, and then shoved him against the car despite undisputed evidence that Heath obeyed police orders. *See Becker v. Elfreich*, 821 F.3d 920, 928 (7th Cir. 2016) ("Force is reasonable only when exercised in proportion to the threat posed[.]") (citation omitted). Last, Defendant Liakopolous treated Walker similarly, namely, throwing him to the ground, kneeling on his neck, and handcuffing him – although Walker did not resist and obeyed police orders. At that time, Defendant Rochowicz had already handcuffed and searched Gaspar and Heath, and other officers were present at the scene of the traffic stop. *See Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 731 (7th Cir. 2013) ("this is not the case of a single officer attempting to control and detain multiple suspects"). Indeed, the Seventh Circuit has "held that significant force is unreasonable after a suspect has stopped resisting or evading arrest." *Alicea v. Thomas,* 815 F.3d 283, 288 (7th Cir. 2016); *see also Cyrus v. Town of Mukwonago*, 624 F.3d 856, 863 (7th Cir.

13

2010) ("It's the totality of the circumstances, not the first forcible act, that determines objective reasonableness.").

Because Plaintiffs were not resisting arrest, attempting to flee, or posing an immediate threat to the officers' or others' safety once Defendants Rochowicz and Liakopolous initially encountered them, Plaintiffs have presented evidence creating a genuine factual dispute for trial that the force Defendants used was objectively unreasonable under the circumstances. *See Graham,* 490 U.S. at 396; *Howell,* 853 F.3d at 898.

Next, Defendants Liakopolous and Rochowicz argue that they are shielded by qualified immunity. Police "officers are entitled to qualified immunity under §1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *D.C. v. Wesby*, ___ S.Ct. ___, 2018 WL 491521, at *10 (U.S. Jan. 22, 2018) (quoting *Reichle v. Howards*, 566 U. S. 658, 664 (2012)); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *D.C. v. Wesby*, 2018 WL 491521, at *11 (U.S. Jan. 22, 2018). "It is not enough that the rule is suggested by then-existing precedent," rather the "precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id*. "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson,* 555 U.S. at 231. "Although qualified immunity is an affirmative defense, the plaintiff has the burden of defeating it once the defendants raise it." *Archer*, 870 F.3d at 613.

Because Plaintiffs have presented sufficient evidence raising a triable issue of fact as to their excessive force claim, the Court turns to whether the alleged unlawfulness of Defendants' conduct was clearly established at the time of the February 7, 2014 traffic stop. When assessing the clearly established prong of qualified immunity "the inquiry is aimed at determining whether a reasonable person in the officer's position would have understood his actions to be against the law at the time he acted," and "the Supreme Court has stressed that the right at issue must be articulated at a meaningful level of particularity." *Canen v. Chapman*, 847 F.3d 407, 412 (7th Cir. 2017). Thus, to carry their burden, Plaintiffs must "show either a reasonably analogous case that has both articulated the right at issue and applied it to a factual circumstance similar to the one at hand or that the violation was so obvious that a reasonable person necessarily would have recognized it as a violation of the law." *Id*. (quoting *Chan v. Wodnicki*, 123 F.3d 1005, 1008 (7th Cir. 1997)).

In their legal memoranda, Defendants focus on cases in which police officers reasonably believed a suspect had a weapon. *See, e.g., Roos v. Patterson*, No. 10-4073, 2013 WL 3899966, at *8 (C.D. Ill. July 29, 2013) ("Courts within the Seventh Circuit have regularly granted and affirmed summary judgment on excessive force claims where the suspect threatened an officer with a weapon or where the officer reasonably believed that the suspect had a weapon."). As discussed above, however, at issue is whether Defendant Officers' continued use of force was objectively reasonable once they determined that Plaintiffs were not armed, had been subdued, and obeyed the officers' orders. Under these circumstances, "[i]t is well established that a police officer may not continue to use force against a suspect who is subdued and complying with the officer's orders." *Johnson v. Scott,* 576 F.3d 658, 660 (7th Cir. 2009); *see also Abbott,* 705 F.3d at 732 ("[p]rior to 2007, it was well-established in this circuit that police officers could not use

15

significant force on nonresisting or passively resisting suspects [and] it was well-established in 2007 that police officers cannot continue to use force once a suspect is subdued"). Plaintiffs point to several other cases showing that they had a clearly established right to be free from excessive force once they no longer posed a threat and were subdued. *See Miller,* 761 F.3d at 829 ("force that is reasonable while a suspect poses a threat may no longer be reasonable as the threat decreases."); *see also Dye v. Wargo,* 253 F.3d 296, 298 (7th Cir. 2001). Accordingly, at the time the officers seized Plaintiffs, it was clearly established that it was objectively unreasonable to use significant force when a suspect is subdued and no longer posing a threat. Therefore, Plaintiffs have met their burden in showing that Defendants are not shielded by qualified immunity when viewing the facts and evidence in their favor. The Court therefore denies Defendants' summary judgment motion as to Count III of the Second Amended Complaint.

## III.   State Law Claims

In Count IV of the Second Amended Complaint, Plaintiffs bring a state law battery claim sounding in tort against the City of Chicago based on Defendant Rochowicz's and Liakopoulos' conduct in seizing Plaintiffs. Under Illinois law, battery is defined as "the unauthorized touching of the person of another." *Wilson v. City of Chicago,* 758 F.3d 875, 879 (7th Cir. 2014); *see also Chelios v. Heavener,* 520 F.3d 678, 692 (7th Cir. 2008) ("Under Illinois law, battery is the 'unauthorized touching' of another that 'offends a reasonable sense of personal dignity.'") (citation omitted).[4] The City maintains that Plaintiffs have failed to set forth sufficient evidence creating a triable issue of fact that Defendant Rochowicz's or Liakopoulos' conduct amounted to battery arguing that Defendants' contact with Plaintiffs was "justified." In essence, Defendants

---

[4] Defendants' reliance on Illinois' criminal battery statute is misplaced. *See* 720 ILCS 5/12-3(a).

are arguing that their use of force was justifiable in relation to self-defense, which "in the context of a civil action for the tort of battery makes sense where justifiable use of force or self-defense is raised." *Davis v. City of Chicago*, 8 N.E.3d 120, 147 (1st Dist. 2014); *see* 720 ILCS 5/7-1. In support of this contention, Defendants argue that "[b]ased on the information received through the 911 dispatch, the officers were justified in stopping the Plaintiffs' vehicle and using an objectively reasonable amount of force in detaining the Plaintiffs[] while the armed robbery was investigated." (R. 91, Opening Brief, at 14.) As discussed above, however, Plaintiffs have presented sufficient evidence creating a triable issue of fact that certain aspects of Defendants' contacts with them were not legally justified based on the amount of force used after Plaintiffs complied with the officers' orders, were subdued, and not resisting arrest.

Turning to Defendants' better argument, they maintain that their conduct was not willful and wanton, and thus they are immune under the Illinois Tort Immunity Act. *See* 745 ILCS 10/2-202 (a "public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct"). The Tort Immunity Act defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1–210. "Although willful and wanton conduct 'consists of more than mere inadvertence, incompetence, or unskillfulness,' it need not be an 'intentional act; rather, it may be an act committed under circumstances exhibiting a reckless disregard for the safety of others." *Chelios,* 520 F.3d at 693 (citations omitted). "Whether an officer acted in such fashion 'is normally a question of fact to be determined by the jury.'" *Id.* (citation omitted); *see also Robles v. City of Chicago*, 2014 IL App (1st) 131599, 381 Ill.Dec. 151, 10 N.E.3d 236, 240 (1st Dist. 2014)

("Whether a person is guilty of wilful and wanton conduct is a question of fact for the jury and should rarely be ruled upon as a matter of law.").

Accepting Plaintiffs' version of the February 7, 2014 incident, a reasonable jury could find that Defendants' continued force when they slammed Plaintiffs against the vehicle and forcibly shoved and grabbed them – although Plaintiffs were following the officers' orders – reflected a reckless disregard for Plaintiffs' safety. *See, e.g., Cravatta v. Lopez,* No. 12 CV 50306, 2016 WL 5871508, at *11 (N.D. Ill. Oct. 7, 2016) ("the court finds no reason to depart from the Seventh Circuit's admonition that the determination of willful and wanton behavior should normally be a question of fact for the jury"). In addition, "when an officer's use of force rises to the level of being unconstitutionally excessive, it will also constitute willful and wanton conduct for purposes of Illinois' Tort Immunity Act." *Karkoszka v. Dart*, No. 13 C 1635, 2016 WL 164331, at *5 (N.D. Ill. Jan. 14, 2016); *see also Lopez v. Dart*, No. 06 C 4836, 2008 WL 4889088, at *5 (N.D. Ill. July 17, 2008) (collecting cases). For these reasons, the Court denies the City's summary judgment motion as to Count IV of the Second Amended Complaint.

On a final note, Defendant Murphy and the City of Chicago do not challenge Plaintiffs' false imprisonment claim as alleged in Count II and the City of Chicago does not move for summary judgment as to the indemnification claim in Count VII. Therefore, Counts II and VII remain in this lawsuit.

## CONCLUSION

For these reasons, the Court grants Defendant Murphy's partial motion for summary judgment [82], grants in part and denies in part Defendant Leonard's partial motion for summary judgment [79], and denies the City Defendants' motion for summary judgment. [90].

**Dated:** January 26, 2018

                                          **ENTERED**

                                          _____
                                          **AMY J. ST. EVE**
                                          **United States District Court Judge**